UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LESLEY RICHARDSON,<br><br>  Plaintiff,<br><br>  v.<br><br>IMAGE SENSING SYSTEMS, INC., a foreign corporation,<br><br>  Defendant. | CASE NO. C10-5629BHS<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND DENYING DEFENDANT'S MOTION FOR SANCTIONS AND MOTION TO STRIKE SURREPLY |

This matter comes before the Court on Defendant Image Sensing System's ("ISS") motion for summary judgment (Dkt. 17), ISS's motion for sanctions (Dkt. 23), ISS's motion to strike surreply (Dkt. 52), and Plaintiff Lesley Richardson's ("Richardson") motion for summary judgment (Dkt. 56). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby grants ISS's motion for summary judgment, denies Richardson's motion for summary judgment, and denies ISS's motion for sanctions and motion to strike surreply for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On August 2, 2010, Richardson filed a complaint in Pierce County Superior Court against ISS alleging violations of Washington's wage and discrimination laws. Dkt. 1, Exh. 1 ("Complaint").

ORDER - 1

1   On July 28, 2010, ISS filed a motion for summary judgment. Dkt. 17.  On August 18, 2011, ISS filed a motion for sanctions. Dkt. 23.  On September 14, 2011, the Court continued consideration of both motions so that Richardson could conduct further discovery. Dkt. 51.  The Court renoted both motions for consideration on October 14, 2011.  *Id.*

On September 11, 2011, Richardson filed a surreply requesting that the Court strike certain documents ISS submitted in support of its motion for summary judgment. Dkt. 49.  On September 20, 2011, ISS filed a motion to strike Richardson's surreply. Dkt. 52.

On October 11, 2011, Richardson filed a motion for summary judgment (Dkt. 56), responded to ISS's motion for summary judgment (Dkt. 60), and responded to ISS's motion for sanctions (Dkt. 62).  On October 14, 2011, ISS replied to both of its motions. Dkts. 63 & 65.

On October 31, 2011, ISS responded to Richardson's motion for summary judgment. Dkt 66.  On November 4, 2011, Richardson replied.  Dkt. 67.

## II. FACTUAL BACKGROUND

On January 19, 1999, Richardson, at the age of 48, began employment with ISS as a technical writer.  Dkt. 57, Declaration of Lesley Richardson ("Richardson Decl."), ¶¶ 2–3.  ISS provides embedded software signal processing and sensing technologies to the transportation sector for use in safety and surveillance. Dkt. 18, Declaration of Michelle Diermeier ("Diermeier Decl."), ¶ 3.

As a Senior Technical Writer, Richardson's job duties were managing the production of all technical documents, including manuals, software guides, and marketing documents. *Id.* ¶ 6.  She was required to work with other company departments to research and update or create documents for existing and new products.  *Id.*  She was also

required to ensure all corporate documentation was consistent in formatting and style, and she was responsible for ensuring that safety information was drafted for every product. *Id*., Exh. 2.

On August 10, 2004, Richardson signed a Proprietary Information and Inventions Agreement, which provides, in part, as follows:

> <u>Delivery of Documents and Data</u>. In the event of the termination of my employment by the Company or by me for any reason, I will deliver to the Company all documents, data, and information of any nature pertaining to my work with the Company, I will not take with me or deliver to anyone else any documents, data and information (or any reproduction) of any description containing or pertaining to any Proprietary Information and I will sign and deliver the "Termination Certification," attached as Attachment I, to the Company.

*Id*. Exh. 6.

In September 2008, Software Engineering Director Kathleen Hines was hired to supervise and oversee employees in the Engineering Department, including Richardson. *Id*. ¶ 7. ISS claims that Richardson had a documented history of missing numerous deadlines. *See* Dkt. 17 at 3–5. Richardson claims that her workload increased significantly and that she was not allotted the proper amount of time to complete the work. Richardson Decl., ¶¶ 9–10.

On April 1, 2010, Frank Partyka started his employment with ISS as a Senior Technical Writer. Diermeier Decl., Exh. 3. ISS claims that Mr. Partyka was Richardson's replacement (Dkt. 17 at 5), while Richardson claims that he was hired to assist her (Richardson Decl., ¶ 10).

On June 17, 2010, ISS terminated Richardson's employment. Diermeier Decl., Exh. 5. The letter of termination provides, in part, as follows:

> You are being terminated for failure to meet performance standards. You have frequently been asked to demonstrate increased accuracy with regard to prioritizing your work and meeting deadlines. We gave you numerous chances to manage your time, improve your performance and meet the department and company's required standards. However, your recent work

ORDER - 3

>has not been completed in a timely manner or with improved accuracy, which is unacceptable.

*Id*.

Richardson asserts that she "noticed there appeared to be a pattern emerging of older, long-term employees being targeted for harassment and/or leaving the company." Richardson Decl., ¶ 11. Richardson believes that she "was terminated because [she] was an older employee and that the older, long-term and higher paid employees were being targeted by [David Lerner, ISS's Director of Software]." *Id*.

ISS claims that Richardson was informed both during her termination meeting, and in her termination letter, that she would receive payment for any earned and unused vacation pay, which amounted to 119.24 hours, upon the return of all company proprietary information, equipment, or property. Diermeier Decl., Exhibit 5. ISS also claims that it does not have a written policy for paying accrued but unused vacation pay to its terminated employees. ISS's Employee Handbook includes "Vacation Leave" and "Termination of Employment" sections, which outline how vacation time is accrued but do not provide for the payment of accrued but unused vacation time upon termination of employment. *See* Diermeier Decl., Exh. 10.

ISS requested that Richardson return the company's equipment and hard drive because they contain confidential and proprietary information, and the property was in Richardson's possession in Washington. Upon her relocation to Washington, Richardson signed a "Proprietary Information and Inventions Agreement" agreeing to return all company property upon her termination. *Id*., Exh. 6.

Richardson did not return the computer equipment to ISS until August 31, 2010. *Id*., Exh. 8. On September 3, 2010, after receiving the computer equipment, ISS sent Richardson (through her attorney) a check for the accrued but unused vacation pay in the amount of $3,801.84. *Id*., Exh. 9.

ORDER - 4

## III. DISCUSSION

**A.   Motion to Strike**

Richardson filed her surreply requesting that the Court strike Exhibit 26 to the Supplemental Declaration of Kathy Hines (Dkt. 17). Dkt. 49. Richardson argues that the document was not produced during discovery and that the document is not properly authenticated. *Id*. ISS filed a motion to strike Richardson's surreply because it was untimely. Dkt. 52. Both motions to strike are denied. Richardson has had ample time to respond to Exhibit 26 and the document is only marginally relevant to contest Richardson's age discrimination claim.

In ISS's second reply (Dkt. 63), it requests that the Court strike certain arguments and evidence. *Id*. at 7. The motion is denied, but the Court will set forth the admissible evidence that the decision is based upon.

**B.   Summary Judgment**

In this case, ISS moves for summary judgment and dismissal of all of Richardson's claims. Dkt. 17 at 15. Richardson moves for summary judgment on her claim for unpaid wages. Dkt. 56 at 1.

**1.   Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson,* 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**2.    Discrimination**

Richardson asserts a claim for age discrimination under the Washington Law Against Discrimination ("WLAD"), RCW Chapter 49.60. Washington courts have adopted the federal evidentiary burden-shifting protocol for discrimination claims. *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 180 (2002), *overruled on other grounds by McClarty v. Totem Elec.*, 157 Wn.2d 214 (2006). Under this framework, a plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Hill*, 144 Wn.2d at 181. If the plaintiff succeeds, then the defendant must set forth a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. If the defendant

ORDER - 6

succeeds, then the final burden is on the plaintiff to establish that defendant's stated reason is merely pretext for discrimination. *Id*. at 182.

**a.**   *Prima Facie*

To establish a *prima facie* case of age discrimination, Richardson must show that she: "(1) was within the statutorily protected age group; (2) was discharged; (3) was doing satisfactory work; and (4) was replaced by a significantly younger person." *Id*. at 188; *see also Kirby v. City of Tacoma*, 124 Wn. App. 454, 466 (2004) (citing *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996)) (comparing requirements under federal Age Discrimination in Employment Act ("ADEA") requiring that the replacement worker be "substantially younger"). To show disparate treatment, an employee must show that (1) the employee belongs to a protected class and that (2) the employer treated the employee less favorably in the terms or conditions of employment (3) than a similarly situated, nonprotected employee (4) who does substantially the same work. *Davis v. W. One Auto. Group*, 140 Wn.App. 449, 459 (2007).

In this case, it is unclear whether Richardson is claiming direct age discrimination or disparate treatment. Richardson, however, has failed to establish a *prima facie* case for either cause of action. First, the parties dispute whether Mr. Partyka was hired to replace Richardson. If he was hired to replace her, then Richardson fails to show that she was replaced by a significantly younger person because Mr. Partyka was older than Richardson. If he wasn't hired to replace her, then Richardson has also failed to show that she was replaced by a substantially younger person. Therefore, Richardson has failed to submit evidence on an essential element of her claim for age discrimination.

Second, with regard to disparate treatment, Richardson has failed to submit any evidence on essential elements of her claim. Although she alleges that other employees over the age of 40 have received unfounded poor performance reviews, she has failed to submit any evidence regarding similarly situated, nonprotected employees. Moreover,

ORDER - 7

she has failed to submit any evidence regarding nonprotected employees that perform substantially the same work as Richardson.  Therefore, Richardson has also failed to establish a *prima facie* case of disparate treatment.

      **b.**    **Legitimate Reason**

Even if Richardson could somehow establish a *prima facie* case, ISS has met its burden.  Richardson's letter of termination provides a legitimate, nondiscriminatory reason for her termination, which is as follows:

> You have frequently been asked to demonstrate increased accuracy with regard to prioritizing your work and meeting deadlines. We gave you numerous chances to manage your time, improve your performance and meet the department and company's required standards.

Diermeier Decl., Exh. 5.  This reason is supported by substantial evidence that will not be repeated here.  *See* Dkt. 17 at 3-5.

      **c.**    **Pretext**

An employee can demonstrate pretext with evidence showing: (1) the employer's reasons have no basis in fact, (2) the employer was not actually motivated by the reasons, or (3) the reasons are insufficient to prompt the adverse employment decision.  *Domingo v. Boeing Employees' Credit Union*, 124 Wn. App. 71, 88 (2004).

In this case, Richardson fails to submit any evidence that demonstrates pretext.  ISS's reason have basis in fact and documented work history, there is no evidence that ISS was motivated by other reasons, and failure to complete assigned tasks is sufficient to warrant termination.

Therefore, the Court grants ISS's motion for summary judgment on Richardson's claim for age discrimination.

    **3.**    **Unpaid Wages**

Richardson alleges that "ISS willfully and intentionally deprived [Richardson] of wages owed upon her termination . . . ."  Complaint, ¶ 16.  On this issue, the parties

ORDER - 8

dispute whether unpaid vacation time is considered wages under RCW 49.48.010. Richardson mainly relies on one sentence in one case: "we conclude that unpaid vacation benefits constitute compensation due by reason of employment." *McGinnity v. AutoNation, Inc.*, 149 Wn. App. 277, 284 (2009). The sentence is taken out of context, and, if applied as Richardson proposes, would be inconsistent with other Washington case law.

In *McGinnity*, the defendant employer altered its vacation policy *and* informed the employees that they would not lose any accrued, unused paid vacation time. *Id*. at 280. When the employer failed to pay the employees for this accrued time, the employees filed a class action lawsuit. *Id*. The parties agreed to arbitrate the dispute. *Id*. First, the arbitrator "rejected the class's statutory claim for wages under RCW 49.46.090, RCW 49.48.010, and RCW 49.52.020, finding that . . . 'vacation time does not constitute wages under Washington law.'" *Id*. at 280–281. The arbitrator, however, awarded the class over $1.2 million in compensatory damages based on the employer's "breach of contractual obligations to the class." *Id*. The arbitrator also awarded the class $884,647.50 in attorney fees under RCW 49.48.030. *Id*. The employer appealed the award of attorney fees. *Id*.

On appeal, the court declined to review the arbitrator's finding that "vacation time does not constitute wages under Washington law." *Id*. at 283. The court stated that

> [t]he question of whether the class could recover under a statutory wage claim theory is entirely different from the characterization of an award of damages under RCW 49.48.030, where wages are broadly defined as compensation owed by reason of employment. [*Bates v. City of Richland*, 112 Wn. App. 919, 940 (2002)].

*McGinnity*, 149 Wn. App. at 283. With regard to the latter issue, the court held that the employer's contractual obligation to compensate the employees for unpaid vacation time constituted compensation owed by reason of employment for the purposes of awarding attorney fees under RCW 49.48.030. *Id*.

ORDER - 9

The Court disagrees with Richardson that *McGinnity* stands for the proposition that unpaid vacation time is considered "wages" under RCW 49.48.010. ISS sets forth the proper rule in Washington, which is that

> employers are not required to pay employees for unused vacation time unless the employer agrees to do so, or if the employer has a policy of doing so which creates an expectation by the employee of receiving pay for unused vacation.

Dkt. 17 at 13 (citing *Walters v. Ctr. Elec. Inc.*, 8 Wn. App. 322, 327 (1973)).

With regard to the issue of ISS's policies, the parties agree that ISS paid terminated employees for unused vacation time. The parties, however, dispute the terms of that policy. ISS's position is that Richardson would receive payment once she returned certain property (Dkt. 17 at 13-14) and admissible evidence in the record supports this position. For example, Richardson's termination letter provides as follows:

> Payment for any earned and unused vacation (119.24 hours on 6/15), which will be directly deposited into your account on or before 30 days from today, subject to off-set for unreturned company proprietary information, equipment or property.

Diermeier Decl., Exh. 5. Moreover, Richardson agreed to the return of certain proprietary information upon termination. *See* Diermeier Decl., Exh. 6 (Proprietary Information and Inventions Agreement), ¶ 3.

On the other hand, Richardson contends that she was unconditionally entitled to payment of her unused vacation time. While Richardson provides ample evidence that employees were commonly paid unused vacation upon termination, Richardson provides little, if any, evidence that payment was unconditional. Richardson states that it was her understanding that payment would be unconditional and no one ever told her differently. *See* Dkt. 58, Declaration of Lesley Richardson, ¶ 3. Even if Richardson's declaration could somehow establish an implied provision of employment, the evidence does not create a genuine issue of material fact because the Ninth Circuit "has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving'

ORDER - 10

testimony." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (citing *Kennedy v. Applause, Inc*., 90 F.3d 1477, 1481 (9th Cir. 1996)). Richardson simply has submitted no other evidence that her entitlement to vacation pay was unconditional.

Therefore, the Court grants ISS's motion for summary judgment and denies Richardson's motion for summary judgment because Richardson has failed to show (1) that she was unconditionally entitled to vacation pay upon termination as a matter of law or (2) that a genuine question of material fact exists that ISS's instituted a policy or practice to unconditionally pay unused vacation time upon termination.

**C.     Sanctions**

ISS moves for sanctions under Fed. R. Civ. P. 11 to "to recover all of its attorneys' fees and costs" because "defending against [Richardson's] frivolous and meritless claims has been unduly burdensome and costly . . . ." Dkt. 23 at 2. When a

> complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it.

*Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (internal quotations and citation omitted).

In this case, the Court does not find that the complaint is baseless or that the attorney failed to conduct a reasonable inquiry. Therefore, the Court denies ISS's motion for sanctions.

### IV. ORDER

Therefore, it is hereby **ORDERED** that ISS's motion for summary judgment (Dkt. 17) is **GRANTED**, Richardson's motion for summary judgment (Dkt. 56) is **DENIED**,

ORDER - 11

1 | ISS's motion for sanctions (Dkt. 23) is **DENIED**, and its motion to strike surreply (Dkt.
2 | 52) is **DENIED**.  The Clerk is directed to enter judgment for ISS.

DATED this 16th day of November, 2011.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 12